**Opinion filed January 18, 2024**



# In The

# Eleventh Court of Appeals

_____

## No. 11-22-00086-CR

_____

## RONDALE GERROD FARRIS, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 358th District Court**
**Ector County, Texas**
**Trial Court Cause No. D-18-2005-CR**

## M E M O R A N D U M   O P I N I O N

The jury found Rondale Gerrod Farris, Appellant, guilty of the offenses of murder, felony murder, and engaging in organized criminal activity as charged in the indictment.[1]  TEX. PENAL CODE ANN. §§ 19.02, 71.02 (West Supp. 2023).  The jury then assessed punishment at confinement in the Correctional Institutions

---

[1]Appellant was originally indicted in 2018 and then reindicted in 2021.

Division of the Texas Department of Criminal Justice for a term of sixty-five years, fifty years, and twenty years, respectively. The trial court sentenced Appellant in accordance with the jury's verdict and ordered that the sentences were to run concurrently.

Appellant raises four issues on appeal. First, he argues that his convictions for murder and felony murder violate the Double Jeopardy Clause of the Constitution of the United States. Second, he maintains that the evidence is insufficient to support his convictions for murder, felony murder, and engaging in organized criminal activity. In his third issue on appeal, Appellant asserts that the trial court erred when it denied Appellant's motion for new trial. And in his fourth issue on appeal, Appellant contends that the trial court erred when it admitted evidence of gang tattoos that did not belong to Appellant. We affirm in part and vacate in part.

*Factual and Procedural History*

At approximately 2:00 a.m. on July 13, 2018, Odessa Police Department (OPD) Officer Brandon Teneyck responded to a call about a gunshot victim; the shooting occurred outside an Odessa convenience store. When Officer Teneyck arrived at the scene, he determined that the shooting victim, Treginale White, was still breathing. Officer Teneyck attempted to provide first aid, to secure the scene of the crime, and to give information to dispatch about the chaotic scene. Shortly after Officer Teneyck arrived, an ambulance arrived as well. White did not survive his gunshot wounds and his death was ruled a homicide.

OPD Sergeant Justin Caid testified that at the time of the investigation, he was a detective in the robbery/homicide unit of the Criminal Investigation Division (CID). Sergeant Caid arrived on the scene at approximately 3:15 a.m. and began his investigation into the shooting. Sergeant Caid detected the presence of blood where White had been lying before emergency medical personnel transported him for medical treatment. An inspection of the area also revealed that there were bullet

2

defects in a maroon Cadillac that was associated with White, discharged cartridge casings from a .40 caliber firearm, and pieces of projectile jacketing. Sergeant Caid conducted interviews with multiple witnesses at the scene. One witness—who came forward after the shooting—testified that he heard four gunshots and that he saw Appellant shoot White.

Sergeant Caid obtained surveillance footage recorded from inside the convenience store. The video contained footage from two different angles: one focused closer to the cash register, but with a view of the front door and just outside of the front of the store, and one with a wider view of the store that shows the front windows and the outside of the front of the store. An OPD officer with CID edited the footage so that the videos appeared as one. The jury saw the footage. The jury also saw other versions of the same video; some in slow motion and others that highlighted Appellant.

The video shows that as Appellant was standing in line at the cash register, a man later identified as Christopher George entered the store and caught Appellant's attention. Appellant and George then ran out the door. As Appellant ran out the door, he raised his arms and ran toward White.

Officer Caid testified that the surveillance footage showed that Appellant was putting pressure on his right side as he was running out of the convenience store. According to Officer Caid, that was a common action if an unretained (unholstered) weapon is tucked in a waistband. Appellant's former girlfriend testified that Appellant is right-handed, and that he frequently carried a firearm in his waistband.

As Appellant, with his arms raised, went toward White, four gunshots rang out and White fell to the ground; Appellant ran away.

Law enforcement personnel determined that Appellant was the one who had shot and killed White, Officers later apprehended Appellant in California.

The State presented evidence of Appellant's gang affiliation. Gang Intelligence Officer Jeremy Berry testified that, although Appellant was not immediately identified as being involved in a gang, Appellant later admitted that he was a member of the Rollin 60s Crips (Crips). Officer Berry also testified that George was identified as being involved with the Crips. Over Appellant's objection, the trial court admitted evidence pertaining to George's tattoos. The tattoos purportedly showed his affiliation with the Crips. Both Appellant and George had tattoos related to the Crips. The trial court also admitted photographs of Appellant's tattoos into evidence. The jury also heard testimony that White was a Blood gang member and was on parole at the time of his death for the murder of a Crips gang member.

As we have said, following the close of evidence, the jury found Appellant guilty of the offenses of murder, felony murder, and engaging in organized criminal activity. Appellant timely filed a motion for new trial, wherein he alleged two complaints: (1) that the verdict was contrary to the evidence and "did not meet the relevant standard required for conviction", and (2) that Appellant was convicted for two offenses of the same conduct (murder and felony murder). Appellant later amended the motion for new trial to include an allegation that the State failed to disclose exculpatory and material evidence: the State's lead prosecutor and OPD Detective Trent Autrey were in a long-term relationship with one another. The trial court conducted a hearing on the motion for new trial and denied it.

*Issue One: A Violation of the Double Jeopardy Clause Occurred*

In Appellant's first issue, he claims that his convictions for murder and felony murder violate the Double Jeopardy Clause of the Constitution of the United States. Both convictions are related to the murder of the same victim: Treginale White.

4

Appellant and the State both contend that the proper remedy is to vacate the felony murder conviction.[2] We agree.

    1. *Standard of Review*

    The Fifth Amendment provides that no person "shall . . . be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. The United States Supreme Court has concluded that the Fifth Amendment offers three separate constitutional protections: (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense. *Cavazos*, 203 S.W.3d at 336 (citing *N.C. v. Pearce*, 395 U.S. 711, 717 (1969), *overruled on other grounds by Ala. v. Smith*, 490 U.S. 794 (1989)). The Double Jeopardy Clause imposes few, if any, limitations on the legislative power to establish and define offenses. *Ex parte Hawkins*, 6 S.W.3d 554, 556 (Tex. Crim. App. 1999) (citing *Brown v. Ohio*, 432 U.S. 161 (1977)). The legislature, therefore, determines whether offenses are the same for double jeopardy purposes by defining the "allowable unit of prosecution." *Id.* (citing *Sanabria v. U.S.*, 437 U.S. 54, 69-70 (1978)).

---

[2]To preserve a double jeopardy complaint, the burden is on the defendant to raise—in some way—a double jeopardy objection "at or before the time the charge is submitted to the jury." *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006) (citing to *Gonzalez v. State*, 973 S.W.2d 427, 431 (Tex. App.—Austin 1998), *aff'd*, 8 S.W.3d 640 (Tex. Crim. App. 2000)). However, because double jeopardy protections are fundamental, a double jeopardy claim may be raised for the first time on appeal if: (1) "the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record" and (2) "when enforcement of the usual rules of procedural default serves no legitimate state interest." *Id.* (citing *Gonzalez*, 8 S.W.3d at 643 (footnotes omitted)). Here, Appellant did not raise any double jeopardy objections prior to the jury receiving the charge. However, the double jeopardy violation is clear on the face of the record as there was only one victim, and therefore only one allowable unit of prosecution. *See Ex parte Cavazos*, 203 S.W.3d 333, 336–37 (Tex. Crim. App. 2006) (citing *Ex parte Rathmell*, 717 S.W.2d 33, 36 (Tex. Crim. App. 1986)). There is no allegation that Appellant cannot raise his double jeopardy claim for the first time on appeal; instead, the State agrees that the felony murder conviction should be vacated. Thus, there is no legitimate state interest served to prevent the issue being raised on appeal. Accordingly, Appellant's double jeopardy issue may be raised for the first time on appeal.

To determine whether there are multiple convictions for the same offense, we first apply the "same elements" test laid out in *Blockburger*. *Bien v. State*, 550 S.W.3d 180, 184 (Tex. Crim. App. 2018). Under the *Blockburger* test, "two offenses are not the same if each provision requires proof of a fact which the other does not." *Id.* (citing *Blockburger v. U.S.*, 284 U.S. 299, 304 (1932)). In Texas, we look to the pleadings and relevant statutory provisions—not to the evidence presented at trial—to inform this test. *Nawaz v. State*, 663 S.W.3d 739, 744 (Tex. Crim. App. 2022); *Bien*, 550 S.W.3d at 184. If the two offenses have the same elements, a judicial presumption arises that the offenses are the same for purposes of double jeopardy. *Bien*, 550 S.W.3d at 184. This presumption can be rebutted by a clearly expressed legislative intent to create two separate offenses. *Id.* If, however, the two offenses do not have the same elements, the judicial presumption is that the offenses are different for double jeopardy purposes and multiple punishments are permitted. *Id.* at 185. This presumption can be rebutted if it is clear the legislature intended that only one punishment be assessed. *Id.*

The legislature also decides whether a particular course of conduct involves one or more distinct offenses under a given statute. *Id.* The Texas Court of Criminal Appeals has considered the statute governing murder and determined that "variants of murder contained within the same statutory section are the same offense for double jeopardy purposes when the same victim is involved." *Ervin v. State*, 991 S.W.2d 804, 807, 815 (Tex. Crim. App. 1999). Thus, the allowable unit of prosecution for homicide is based on the number of victims involved. *Cavazos*, 203 S.W.3d at 336–37 (citing *Ex parte Rathmell*, 717 S.W.2d 33, 36 (Tex. Crim. App. 1986)). Here, we have two convictions for two variants of murder and only one victim. Thus, although murder and felony murder are distinct offenses under the *Blockburger* test, because there is only one victim, Appellant's convictions violate

6

the Double Jeopardy Clause. *See Ervin*, 991 S.W.2d at 807; *Barnes v. State*, 665 S.W.3d 192, 201–02 (Tex. App.—Eastland 2023, no pet.).

When multiple convictions violate the Double Jeopardy Clause, we retain the conviction for the "most serious" offense and set aside the others. *Bien*, 550 S.W.3d at 188; *Cavazos*, 203 S.W.3d at 337 (citing *Landers v. State*, 957 S.W.2d 558, 559–60 (Tex. Crim. App. 1997)). "The most serious offense is the offense of conviction for which the greatest sentence was assessed." *Bien*, 550 S.W.3d at 188 (internal quotation marks omitted) (citing *Cavazos*, 203 S.W.3d at 338). In *Bien*, the Court of Criminal Appeals additionally held that if there was a "practical impossibility" of determining which offense was most serious, the prosecutor should have some discretion in determining which conviction to retain. *Id.* at 188–89.

2. *Analysis*

Appellant was convicted of murder and felony murder. Both are first-degree felony offenses and carry the same punishment range. PENAL § 19.02(c), § 12.32 (West 2019). The jury assessed—and the trial court imposed—different sentences for each conviction. For the murder conviction, the jury assessed punishment at confinement for sixty-five years and for the felony murder conviction, the jury assessed punishment at confinement for fifty years. Therefore, the murder conviction is the "most serious offense" since the sentence assessed for that conviction was the greatest.

Appellant's first issue is sustained. We vacate the conviction for felony murder along with the corresponding punishment.

*Issue Two: There is Sufficient Evidence Supporting the Murder Conviction*

In Appellant's second issue, he argues that the evidence is insufficient to support any of his three convictions. As we have vacated the conviction for felony murder under the Double Jeopardy Clause, we are only left with the issue of sufficiency as to the convictions for murder and engaging in organized criminal

7

activity. However, for whatever reason, Appellant limits the argument portion of his brief to the sufficiency of evidence as to the murder charge only. Specifically, Appellant argues on appeal that the State failed to establish beyond a reasonable doubt that he was the person who shot White, as alleged in Count One (murder) of the reindictment and as the trial court charged the jury. Accordingly, we limit our analysis to a sufficiency review for the murder conviction.[3]

1. *Standard of Review*

We review a challenge to the sufficiency of the evidence, under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288−89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018); *Brooks*, 323 S.W.3d at 895; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

Viewing the evidence in the light most favorable to the verdict requires that we consider all the evidence admitted at trial, including improperly admitted evidence. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). As such, we defer to the factfinder's credibility and weight determinations because the factfinder is the sole

---

[3]*See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable . . . and necessary to final disposition of the appeal."). Although Appellant's *heading* for his second issue appears to include a challenge to the sufficiency of evidence for all three convictions, substantively, the argument focuses only on the murder conviction. We decline to make Appellant's arguments for him and proceed only on the arguments he presented and briefed: whether there was insufficient evidence to support that Appellant was the shooter for the murder conviction. *Arevalo v. State*, 675 S.W.3d 833, 845 (Tex. App.—Eastland 2023, no pet.) (citing TEX. R. APP. P. 38.1(i); *see also Ybarra v. State*, 621 S.W.3d 371, 379 n.3 (Tex. App.—Eastland, 2021, pet. ref'd)).

judge of the witnesses' credibility and the weight their testimony is to be afforded. *Winfrey*, 393 S.W.3d at 768; *Brooks*, 323 S.W.3d at 899.  The *Jackson* standard is deferential and accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *Jackson*, 443 U.S. at 319; *Zuniga*, 551 S.W.3d at 732; *Clayton*, 235 S.W.3d at 778. We may not reevaluate the weight and credibility of the evidence to substitute our judgment for that of the factfinder.  *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999).  Instead, we determine whether the necessary inferences are based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.  *Clement v. State*, 248 S.W.3d 791, 796 (Tex. App.— Fort Worth 2008, no pet.).  Therefore, if the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination.  *Jackson*, 443 U.S. at 326; *Merritt v. State*, 368 S.W.3d 516, 525−26 (Tex. Crim. App. 2012); *Clayton*, 235 S.W.3d at 778.

Further, we treat direct and circumstantial evidence equally under this standard.  *Isassi*, 330 S.W.3d at 638; *Clayton*, 235 S.W.3d at 778; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).  It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt.  *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper*, 214 S.W.3d at 13).  Therefore, in evaluating the sufficiency of the evidence, we must consider the cumulative force of all the evidence.  *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017); *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015).  Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction.  *Hooper*, 214 S.W.3d at 13.

Finally, we measure the legal sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Morgan v. State*, 501 S.W.3d 84, 89 (Tex. Crim. App. 2016); *see also Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240.

2. *Applicable Law and Analysis*

As charged in Count One of the indictment, a person commits the offense of murder if he "intentionally or knowingly causes the death of an individual" or the person "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." *See* PENAL § 19.02(b)(1), (2). These two methods of murder are not separate offenses but are, instead, alternative methods of committing the same offense. *Walter v. State*, 581 S.W.3d 957, 968 (Tex. App.—Eastland 2019, pet. ref'd). Following a trial, the jury found Appellant guilty as charged in Count One of the indictment, in which the State alleged that Appellant committed murder as described in Sections 19.02(b)(1) and (b)(2) of the Texas Penal Code by shooting White with a firearm.

Considering all the evidence in the light most favorable to the verdict, we conclude that the jury could reasonably infer that Appellant intentionally or knowingly caused White's death by shooting him with a firearm, or that he intended to cause White serious bodily injury and committed an act clearly dangerous to human life by shooting him with a firearm, causing his death as alleged in the reindictment.

The medical examiner (ME) testified that the manner of White's death was homicide, caused by gunshot wounds to the head. The ME also testified that the

10

wounds were "intermediate range wounds," meaning that the approximate distance between the barrel of the gun and the victim's skin was within one to a few feet. The wounds were from the right to the left side of the victim's body, signifying that the shooter had to be on the right side of the victim when the shots were fired. Sergeant Caid testified that the shell casings found at the scene were consistent with Appellant's course of direction as he approached the victim.

The jury also heard testimony that an eyewitness saw Appellant shoot White. That, along with the video evidence of Appellant's close proximity to White at the approximate time the four gunshots were heard, the testimony that Appellant was known to carry a firearm in his waistband, and the testimony that Appellant approached White with raised arms after White seemingly accessed his firearm, all tend to support the jury verdict. The jury could reasonably conclude that Appellant intended to shoot White, that he did shoot White, and that the gunshot wounds inflicted by Appellant caused White's death. The evidence is sufficient to support the conviction of murder, and we overrule Appellant's second issue.

*Issue Three: The Trial Court did not Abuse its Discretion by Denying the Amended Motion for New Trial*

In Appellant's third issue on appeal, he challenges the trial court's denial of his amended motion for new trial. Appellant argues that because the State withheld evidence in violation of *Brady*[4] and Article 39.14 of the Texas Code of Criminal Procedure, the trial court erred when it denied the motion. The evidence complained of by Appellant was that, at the time of trial, the lead prosecutor for the State was in a long-term relationship with a detective who participated in the case investigation and who testified at trial.

---

[4]*See Brady v. Maryland*, 373 U.S. 83 (1963).

11

1. *Standard of Review*

We review a trial court's decision to grant or deny a motion for new trial under an abuse of discretion standard. *State v. Herndon*, 215 S.W.3d 901, 906–07 (Tex. Crim. App. 2007). "A trial judge does not have authority to grant a new trial unless the first proceeding was not in accordance with the law." *Id.* at 907. An abuse of discretion occurs if the trial court acted without reference to any guiding rules or principles. *State v. Thomas*, 428 S.W.3d 99, 103 (Tex. Crim. App. 2014) (citing *Herndon*, 215 S.W.3d at 907). "The mere fact that a trial court may decide a matter differently from an appellate court does not demonstrate an abuse of discretion." *Id.* at 103–04. We view the evidence in the light most favorable to the trial court's ruling and defer to the trial court for credibility determinations and reasonable fact findings which support the ruling. *Id.* at 104. Rule 21.3 of the Texas Rules of Appellate Procedure provides a list of legal grounds on which the trial court *must* grant a new trial. TEX. R. APP. P. 21.3; *see Herndon*, 215 S.W.3d at 907. The list is not exhaustive, and the trial court *may* grant a new trial on other legal grounds. *Herndon*, 215 S.W.3d at 907.

2. *Applicable Law and Analysis*

The Supreme Court in *Brady v. Maryland* held that "the suppression by the prosecution of evidence favorable to an accused . . . violates due process where the evidence is material either to guilt or to punishment," regardless of the good or bad faith intent of the prosecution. *Brady*, 373 U.S. at 87. This rule was intended to avoid unfair trials for those accused of crimes. *Pena v. State*, 353 S.W.3d 797, 809 (Tex. Crim. App. 2011) (citing *Brady*, 373 U.S. at 86–88). *Brady* essentially created a federal constitutional right to certain minimal discovery: that which is favorable to the accused and is material to either guilt or punishment. *See U.S. v. Bagley*, 473 U.S. 667, 674–76 (1985). The duty to disclose evidence is applicable even without a request from a defendant and it encompasses both impeachment and exculpatory

evidence. *Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006) (citing *Bagley*, 473 U.S. 667; *U.S. v. Agurs*, 427 U.S. 97 (1976)).

Under *Brady*, the defendant bears the burden of showing that, in light of all the evidence, it is reasonably probable that the outcome of the trial would have been different had the prosecution made a timely disclosure of the evidence at issue. *Hampton v. State*, 86 S.W.3d 603, 612 (Tex. Crim. App. 2002). Thus, to find reversible error under *Brady*, a defendant must show that:

1) the State failed to disclose evidence, regardless of the prosecution's good or bad faith;

2) the withheld evidence is favorable to him;

3) the evidence is material, that is, there is a reasonable probability that had the evidence been disclosed, the outcome of the trial would have been different.

*Webb v. State*, 232 S.W.3d 109, 114 (Tex. Crim. App. 2007) (citing *Hampton*, 86 S.W.3d at 612). Merely showing that the undisclosed information could have *possibly* helped the defense or *may* have affected the outcome of the trial is not enough to establish materiality in the constitutional sense. *Id.* at 115.

"Determining whether particular evidence was 'material' as part of a claimed *Brady* violation is a mixed question of law and fact." *Diamond v. State*, 613 S.W.3d 536, 545 (Tex. Crim. App. 2020) (citing *Ex parte Weinstein*, 421 S.W.3d 656, 664 n.17 (Tex. Crim. App. 2014)); *see also Summers v. Dretke*, 431 F.3d 861, 878 (5th Cir. 2005) ("Whether evidence is material under *Brady* is a mixed question of law and fact."); *U.S. v. Sipe*, 388 F. 3d 471, 479 (5th Cir. 2004) ("Whereas we typically analyze legal issues de novo, a *Brady* determination is inevitably a contextual inquiry, involving questions of both law and fact."); *U.S. v. Severns*, 559 F.3d 274, 278 (5th Cir. 2009) ("[W]here the motion for a new trial is based on an alleged *Brady* violation, the *Brady* determination is 'inevitably a contextual inquiry, involving questions of both law and fact.'"). Moreover, "[w]hile we examine the *Brady*

question de novo, 'we must proceed with deference to the factual findings underlying the district court's decision.'" *Severns*, 559 F.3d at 278; *see also Horne v. State*, 554 S.W.3d 809, 813 (Tex. App.—Waco 2018, pet. ref'd).

In Appellant's amended motion for new trial, he claims that the personal relationship between the lead prosecutor and a testifying witness for the State is not only relevant but should have been disclosed under both *Brady* and Article 39.14. According to the motion, the personal relationship was significant for impeachment purposes, and Appellant had the right to cross examine the testifying witness for his purported bias, interest, and motives for testifying. *See Hammer v. State*, 296 S.W.3d 555, 563 (Tex. Crim. App. 2009). We agree.

However, to find reversible error due to the failure to disclose, Appellant needed to show three things to establish a violation of *Brady*: (1) that the State suppressed the evidence, (2) that the suppressed evidence is favorable to the defendant, and (3) that the suppressed evidence is material. *See Webb*, 232 S.W.3d at 114 (citing *Hampton*, 86 S.W.3d at 612). Incorporated into the third prong is the requirement that the defendant be prejudiced by the failure to disclose the favorable evidence. *Harm*, 183 S.W.3d at 406. In this case, it is clear that the State should have disclosed information about the lead prosecutor's relationship with a detective involved in the investigation who was also a testifying witness for the State. *See Peek v. State*, 494 S.W.3d 156, 164–65 (Tex. App.—Eastland 2015, pet. ref'd) (Impeachment evidence is tied to an accused's Confrontation Clause rights and "[t]he accused should be allowed great latitude to show a witness's bias, prejudice, or motives to testify falsely."). The admission of the relationship is favorable evidence insofar as it is relevant impeachment evidence. *See Diamond*, 613 S.W.3d at 545 (where favorable evidence includes impeachment evidence). However, the nondisclosure of favorable evidence is only a violation of due process if that evidence is "material" to guilt or punishment, and evidence is only material if it is

14

reasonably probable that if it had been disclosed it would have impacted the outcome of trial. *Id.* at 546.

Viewing the evidence presented at the motion-for-new-trial hearing in the light most favorable to the ruling, we hold that the trial court did not err when it concluded that the evidence was not material, and that a new trial was not warranted. *See Thomas*, 428 S.W.3d at 104. During the hearing on the motion, Appellant's trial counsel testified that he would not have done anything differently had the relationship been disclosed prior to trial. Counsel testified that the subject of the witness' testimony "could not have [been] manipulated," was not "overly relevant in the totality of circumstances," and that the theory of the case was related to the integrity of the crime scene—actions occurring *prior* to the witness arriving at the crime scene.

Even on appeal, Appellant admits that no one knows what impact this impeachment evidence would have had on the jury. The mere possibility that the evidence *may* have affected the outcome of the trial is not enough to establish materiality in the constitutional sense. *Webb*, 232 S.W.3d at 115. Without a showing of prejudice, there is no evidence of a violation of *Brady* or Article 39.14 that requires reversal. Therefore, we cannot say the trial court acted without reference to any guiding principles when it denied the amended motion for new trial, or that the denial was an abuse of discretion. *See Thomas*, 428 S.W.3d at 103 (citing to *Herndon*, 215 S.W.3d at 907). We overrule Appellant's third issue.[5]

---

[5]We note that the State, at the motion-for-new-trial hearing and in its brief on appeal, characterizes information about the relationship between the lead prosecutor and the testifying detective as "newly discovered evidence." *See* TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2018). The State argues that Appellant was required to satisfy the four-prong test required to obtain relief under Article 40.001 but failed to do so. *See State v. Arizmendi*, 519 S.W.3d 143, 149 (Tex. Crim. App. 2017) (citing *Carsner v. State*, 444 S.W.3d 1, 2–3 (Tex. Crim. App. 2014). Appellant does not claim error under this theory. In any event, the State's newly-discovered-evidence argument would not and does not alter our decision to overrule Appellant's third issue.

*Issue Four: The Admission of Tattoo Photos was not an Abuse of Discretion*

In Appellant's fourth issue on appeal, he alleges that the trial court erroneously admitted State's Exhibit Nos. 87, 89, and 90.[6] The images are photographs of George's tattoos. Appellant objected on relevance grounds and additionally alleged that the images were more prejudicial than probative. The trial court overruled the objection and admitted all four photographs into evidence.

1. *Standard of Review*

A trial court's ruling on the admissibility of evidence is reviewed under an abuse of discretion standard. *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). A trial court abuses its discretion when it goes outside the zone of reasonable disagreement. *Id.* If the trial court's ruling is correct under any applicable theory of law, we will not disturb the ruling, even if the stated reason for the ruling is wrong or insufficient. *Id.* In order to complain that the trial court erred when it admitted or excluded evidence, the complaining party must obtain an adverse ruling from the trial court, or must object to the court's refusal to rule. Otherwise, the complaining party has not preserved error. *Moff v. State*, 131 S.W.3d 485, 489 (Tex. Crim. App. 2004).

2. *Applicable Law and Analysis*

Appellant objected to the complained-of photographs; therefore, the issue was preserved for appellate review. The photographs of George's tattoos were offered to show Appellant's association with a gang. The State argued at trial that George's presence at the crime scene makes his relationship with Appellant relevant, and that that association was pertinent evidence for Count Three of the indictment—engaging

---

[6]Appellant claims that he is appealing the admission of State's Exhibit Nos. 86 through 90; however, there is no Exhibit No. 88 in evidence, and it was not offered at the time of the objection. Additionally, although Appellant initially objected to Exhibit No. 86, Appellant later declined to renew his objection to Exhibit No. 86—saying "the jury can consider the relevance of it"—after the State's witness indicated it was not a photo of a gang-related tattoo.

in organized criminal activity. Appellant argues on appeal that the evidence of George's gang-related tattoos was not relevant to the case against Appellant. In this regard, Appellant claims that the question before the jury was solely related to whether he was the person who shot and killed White, and as such, the photos of tattoos were not relevant. This fails to address the State's given reason for offering the photographs during the trial: that the photographs tended to show that Appellant's tattoos were similar to George's, and thus would be some evidence of his association with a gang, as required in Count Three. *See Phillips v. State*, 534 S.W.3d 644, 657–58 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (photos of gang tattoos admitted were relevant particularly in conjunction with expert testimony regarding gang connection of defendant). *See also Washington v. State*, 485 S.W.3d 633, 639 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

Gang Intelligence Officer Berry testified that Appellant admitted to being a member of the Crips. Officer Berry also testified that George was identified as being involved with the Crips. Both Appellant and George had tattoos related to the Crips. An element of engaging in organized criminal activity, requires a probable cause showing that a defendant intended to establish, maintain, or participate in either a combination or a criminal street gang. *Barrera v. State*, 321 S.W.3d 137, 152 (Tex. App.—San Antonio 2010, pet. ref'd). The display of tattoos or other symbols is relevant in establishing gang membership. *Id.* at 153 (citing *Garza v. State*, 213 S.W.3d 338, 347 (Tex. Crim. App. 2007)). Because one of the elements of engaging in organized criminal activity would require membership in a criminal street gang, we cannot say this is outside the zone of reasonable disagreement to admit evidence relevant to that determination. *See* PENAL §§ 71.02(a), 71.01(d). We overrule Appellant's fourth issue.

17

*This Court's Ruling*

We vacate Appellant's felony murder conviction under Count Two because it violates the Double Jeopardy Clause. Accordingly, we reverse the judgment of the trial court as to Count Two and render a judgment of acquittal as to that count. *See Saenz v. State*, 131 S.W.3d 43, 53 (Tex. App.—San Antonio 2003), *aff'd*, 166 S.W.3d 270 (Tex. Crim. App. 2005). Having overruled Appellant's remaining issues, we affirm the judgments of the trial court as to Count One and Count Three.


W. BRUCE WILLIAMS

JUSTICE


January 18, 2024

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Williams, J., and Wright, S.C.J.[7]

Trotter, J., not participating.

---

[7]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.